# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDWARD A. CARLSON, | ) |
| Appellant, | ) No. 11 C 2159 |
| | ) |
| | ) Judge George M. Marovich |
| v. | ) |
| | ) |
| NORTH SHORE COMMUNITY | ) Appeal from Bankruptcy |
| BANK & TRUST CO., | ) |
| | ) Adv. No. 09 A 00231 |
| Appellee | ) |

## MEMORANDUM OPINION AND ORDER

Appellant Edward A. Carlson ("Carlson") appeals the decision of the bankruptcy court to grant summary judgment to North Shore Community Bank & Trust Co. ("North Shore") on Count I of its adversary complaint against Carlson. For the reasons set forth below, the decision of the bankruptcy court is affirmed.

## I.  Background

After Carlson filed a voluntary bankruptcy petition under Chapter 7, North Shore filed an adversary proceeding against Carlson. In Count I of its adversary proceeding, North Shore alleged, among other things, that a particular debt [a $1,300,000.00 mortgage on Fox Valley Ice Arena LLC ("Fox Valley")] was not dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A), because Carlson had obtained the debt by false representation. North Shore alleged that Carlson had misrepresented the existence of litigation against him and that he misrepresented his authority to grant a mortgage on behalf of Fox Valley. North Shore moved for summary judgment. The bankruptcy court found an issue of fact as to the litigation misrepresentation but

concluded that North Shore was entitled to judgment as a matter of law with respect to Carlson's misrepresentation that he had authority to grant a mortgage on behalf of Fox Valley.

In support of its motion, pursuant to the bankruptcy court's rules, North Shore submitted a statement of undisputed facts, and Carlson admitted nearly all of them.[1] Thus, the following facts are undisputed.

For some period of time, Carlson, who was the President of a company called CMS, was in the business of acquiring, managing, developing and financing commercial real estate. Carlson had a 30% ownership interest in approximately 30 properties that CMS managed. By 2005, the financial situation at CMS was "stressful."

In the spring of 2006, Carlson sought financing for CMS from North Shore. Carlson has admitted that "[i]n order to induce North Shore to make a loan to CMS, Carlson represented to North Shore that a separate business with which he was affiliated, Fox Valley Ice Arena, LLC ("Fox Valley") would provide a secured interest to North Shore with a mortgage on Fox Valley's real property located in Geneva, Illinois." Fox Valley was a limited liability company. For the entirety of its existence, Fox Valley had exactly two members: Emerald Arena Group, L.P. and FV Arena Partners, LLC. Fox Valley had an Operating Agreement in effect that required 75% of members to approve the mortgaging of Fox Valley's assets. Carlson has never been a member of Fox Valley.

Despite the fact that Carlson was never a member of Fox Valley, Carlson held himself out to be one when he took out a mortgage on Fox Valley. North Shore loaned CMS

---

[1]Later, Carlson filed a new response and a surreply in opposition to North Shore's motion for summary judgment. The bankruptcy judge struck these documents, because Carlson did not seek permission before filing them. Carlson does not challenge that decision in his appeal.

$700,000.00 on June 1, 2006 and increased the loan to $1,250,000.00 in October 2006. In connection with North Shore's loan to CMS, Carlson signed a mortgage on Fox Valley (in June 2006) and a modification of mortgage (in October 2006). When he signed these documents, Carlson represented himself as being a member of Fox Valley and as being authorized to make and modify the mortgage. The mortgage Carlson signed in June 2006 stated that, by signing, Carlson was representing and warrantying that he "has the full power, right and authority to enter into the Mortgage and to hypothecate the Property."

That was not true. Carlson had never obtained approval from Fox Valley's members to sign the Mortgage. Fox Valley never provided authority for or ratified Carlson's action of granting a mortgage on the property.

In responding to North Shore's motion for summary judgment, Carlson admitted, "[a]t the time Carlson induced North Shore to make the loan to CMS based upon granting a Mortgage, Carlson knew that the consent of all of the Members of Fox Valley was needed to authorize the granting of the mortgage on Fox Valley's real property." He also admitted, "[i]n determining whether to grant loan financing to CMS, North Shore relied on the representations made by Carlson that he was authorized to grant a Mortgage on Fox Valley's property as security to North Shore, that Carlson was a Member of Fox Valley, and that no pending lawsuits existed against Carlson in his personal guaranties."

In his own statement of facts, Carlson put forth evidence that a Senior Vice President at North Shore had said that the mortgage on Fox Valley was not the only reason North Shore approved the loan to CMS. Rather, the mortgage "sweetened the pot."

The bankruptcy court granted summary judgment to North Shore, and Carlson filed this appeal.

## II. Standard of review

The Court reviews the bankruptcy court's determinations of law *de novo* and its determinations of fact for clear error. *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009). Of course, the bankruptcy court was ruling on a motion for summary judgment, so it did not make any determinations of fact.

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

To establish an exception from discharge under 11 U.S.C. § 523(a)(2)(A), a creditor must show, "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was

false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010). The bankruptcy court concluded that there were no issues of material fact and that North Shore was entitled to judgment as a matter of law. Carlson takes issue with two parts of the bankruptcy court's decision. First, Carlson believes he has created an issue of fact with respect to his intent to deceive North Shore. Second, Carlson believes he has created an issue of fact as to justifiable reliance.

To prevail, North Shore must show that Carlson knew the representation (that he was a member of and authorized to mortgage Fox Valley) was false or made with reckless disregard for the truth and was made with the intent to deceive. *Ojeda v. Goldberg*, 599 F.3d at 717. The Court agrees with the bankruptcy court that North Shore put forth enough evidence from which a reasonable fact finder could conclude that Carlson knew the representation was false or was made with reckless disregard for the truth and with the intent to deceive. Carlson admitted that "[i]n order to induce North Shore to make a loan to CMS," Carlson told North Shore that Fox Valley would provide a mortgage. Carlson has admitted that, at the time, he knew that the consent of all members was required to mortgage Fox Valley. None of the two members signed the mortgage documents. Instead, although Carlson was not one of Fox Valley's two members, he signed the Mortgage and Modification of Mortgage. He also represented that he had the "full power, right and authority" to enter into the mortgage.

Carlson argues that he created an issue of fact with respect to the intent to deceive. Specifically, Carlson argues, "while Carlson was not formally admitted as a member of [Fox Valley], *it's possible that*, due to the poor record keeping of [Fox Valley] . . ., Carlson *may have*

believed he was a member of [Fox Valley]. (Carlson's brief at 7) (emphasis added). Thus, Carlson wants this Court to reverse a grant of summary judgment based not on evidence, but on conjecture that "it's possible" Carlson "may have believed" he was a member. Summary judgment is the "put up or shut up" moment in litigation: the non-moving party must put forth evidence that could convince a fact-finder to find in his favor. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532 (7th Cir. 2011). Carlson could easily have created an issue of fact if he had, in response to the motion for summary judgment, submitted his own affidavit stating that he thought he was a member of Fox Valley. He did not do so. Merely arguing that "it's possible" Carlson "may have believed" he was a member does not create an issue of fact.

Next, Carlson argues that he has created an issue of fact with respect to element of justifiable reliance. Justifiable reliance "is a less demanding standard than reasonable reliance; it requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda*, 599 F.3d at 717 (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995). A creditor has "no duty to investigate unless the falsity of the representation would have been readily apparent." *Ojeda*, 599 F.3d at 717.

Carlson argues that he created an issue of fact as to whether North Shore justifiably relied on Carlson's misrepresentations by putting forth evidence of a statement made by a North Shore employee. The North Shore employee stated that the Fox Valley mortgage was not the only reason North Shore approved the loan to CMS but rather that it "sweetened the pot." The first problem with Carlson's argument, as North Shore points out, is that Carlson admitted, in response to North Shore's motion for summary judgment, that North Shore relied on his

misrepresentations. Specifically, Carlson admitted, "[i]n determining whether to grant loan financing to CMS, *North Shore relied* on the representations made by Carlson that he was authorized to grant a Mortgage on Fox Valley's property as security to North Shore, that Carlson was a Member of Fox Valley, and that no pending lawsuits existed against Carlson in his personal guaranties." (Carlson's Resp. to North Shore's Statement of Facts ¶ 37) (emphasis added). The only question, then, is whether such reliance was justifiable. Carlson does not argue that reliance was not justified, and there is no evidence in the record to suggest that the falsity of Carlson's representations was apparent. Furthermore, even if Carlson had not admitted that North Shore relied on his misrepresentations, Carlson still would not have created an issue of fact. The issue is not whether North Shore would have made the loan without the Fox Valley mortgage as collateral. The issue is whether North Shore would have accepted the Fox Valley mortgage as collateral without Carlson's misrepresentations that he was a member and authorized to grant the mortgage. Carlson's evidence does not create an issue of fact on that issue.

Accordingly, the Court concludes that the bankruptcy did not err in concluding that there are no issues of material fact and that North Shore was entitled to judgment as a matter of law.

## IV. **Conclusion**

For the reasons set forth above, the Court affirms the decision of the bankruptcy court.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: October 24, 2011